IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| CDX Gas, LLC, *et al.* [1] | § | CASE NO. 08-37922 |
| | § | |
| | § | (Chapter 11) |
| DEBTORS. | § | (Jointly Administered) |
| | § | (Expedited Hearing Requested) |

**EXPEDITED MOTION OF THE DEBTORS FOR AN ORDER (A) APPROVING BIDDING PROCEDURES AND BID PROTECTIONS IN CONNECTION WITH THE SALE OF CERTAIN ASSETS AND EQUITY INTERESTS OF THE ESTATES TO ENERVEST ENERGY INSTITUTIONAL FUND XI-A, L.P. AND ENERVEST ENERGY INSTITUTIONAL FUND XI-WI, L.P.; (B) SCHEDULING AN AUCTION AND HEARING TO CONSIDER APPROVAL OF THE SALE; (C) APPROVING NOTICE RELATING TO THE SALE; AND (D) GRANTING RELATED RELIEF**

**TO THE HONORABLE LETITIA Z. PAUL,
UNITED STATES BANKRUPTCY JUDGE:**

CDX Gas, LLC, and its affiliated debtor entities, as debtors and debtors in possession (collectively, the "Debtors"), by and through their undersigned counsel, hereby file this *Expedited Motion of the Debtors for an Order (A) Approving Bidding Procedures and Bid Protections in Connection with the Sale of Certain Assets and Equity Interests of the Estates to EnerVest Energy Institutional Fund XI-A, L.P. and EnerVest Energy Institutional Fund XI-WI, L.P.; (B) Scheduling an Auction and Hearing to Consider Approval of the Sale; (C) Approving Notice Relating to the Sale; and (D) Granting Related Relief* (the "Motion"). In support of the Motion, the Debtors respectfully state as follows:

---

[1] The Debtors are: (1) CD Exploration, LLC, (2) CDX Acquisition Company, LLC, (3) CDX Barnett, LLC, (4) CDX Bishop Creek, LLC, (5) CDX East, LLC, (6) CDX Gas International, LLC, (7) CDX Gas, LLC, (8) CDX Isolate, LLC, (9) CDX Minerals, LLC, (10) CDX North America, LLC, (11) CDX Operating, LLC, (12) CDX Panther, LLC, (13) CDX Plum Creek, JV, (14) CDX Sequoya, LLC, (15) CDX Services, LLC, (16) CDX Shale, LLC, (17) CDX Tapicito, LLC, (18) CMV Joint Venture, (19) Arkoma Gathering, LLC, (20) Cahaba Gathering, LLC, (21) CDX Canada, Co., and (22) CDX Rio, LLC.

## JURISDICTION, VENUE, AND PROCEDURAL BACKGROUND[2]

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. This Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

2. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. On December 12, 2008 and April 1, 2009 (collectively, the "Petition Date"),[3] the Debtors each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), thereby commencing the above-captioned cases (the "Cases").

4. Since the Petition Date, the Debtors have continued to operate and manage their businesses as debtors in possession pursuant to Bankruptcy Code §§ 1107(a) and 1108. No official committee of creditors has been appointed in these Cases.

## RELIEF REQUESTED

5. By this Motion, Debtors request that, pursuant to Bankruptcy Code §§ 105, 363, and 365 and Rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Court enter an order (a) approving the bidding procedures substantially in the form set forth on **Exhibit "A"** attached hereto (the "Bidding Procedures") in connection with the proposed sale free and clear by the Debtors of (1) certain assets owned by CDX Gas, LLC ("Gas"), (2) all of the assets of CDX Barnett, LLC ("Barnett") and CDX Shale, LLC ("Shale"), (3) the Debtors' equity interest in Arkoma Gathering, LLC ("Arkoma") and (4) pursuant to a plan of reorganization for CDX Rio, LLC ("Rio"), new membership interests in

---

[2] The factual background of the Debtors' business and the circumstances precipitating the filing of the Cases has been previously set forth in detail. Please refer to the Debtors' prior motion filed at docket number 5 for a company overview including the company's corporate structure, assets and operations, management and employees, financial performance and debt obligations.

[3] Arkoma Gathering, LLC, Cahaba Gathering, LLC, CDX Canada, Co., and CDX Rio, LLC filed voluntary petition for relief under the Bankruptcy Code on April 1, 2009. All other Debtors filed on December 12, 2008.

reorganized Rio,[4] and the assumption and/or assignment of certain executory contracts and unexpired leases related to such sales; (b) approving break-up fees and overbid protections (the "Bid Protections") to EnerVest Energy Institutional Fund XI-A, L.P. and EnerVest Energy Institutional Fund XI-WI, L.P. (collectively, the "Proposed Purchaser") in accordance with that certain Asset Purchase Agreement dated as of April 15, 2009 by and among Gas, Barnett, Shale, and the Proposed Purchaser (the "APA"), a copy of which is attached to that certain *Debtors' Motion for an Order Approving the Sale of Assets and Equity Interests Free and Clear of Liens, Claims and Encumbrances and the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases to EnerVest Energy Institutional Fund XI-A, L.P. and EnerVest Energy Institutional Fund XI-WI, L.P.* filed contemporaneously herewith (the "Sale Motion") and that certain Subscription Agreement dated as of April 15, 2009 by and among Rio and the Proposed Purchaser (the "Subscription Agreement," and together with the APA, the "Agreements"), a copy of which is attached to that certain Plan of Reorganization filed substantially contemporaneous herewith (the "Rio Plan"); (c) approving the Proposed Purchaser as the "stalking horse" bidder in connection with the Debtors' solicitation of higher and better offers for the Assets and New Rio Equity; (d) setting a date for an auction of the Assets and New Rio Equity (the "Auction"); (e) scheduling a single date for concurrent hearings on the sale of the Assets (the "Sale Hearing") and the confirmation of the Rio Plan (the "Confirmation Hearing") whereby the Court will consider (i) approval of the sale of the Assets, (ii) confirmation of the Rio Plan authorizing, *inter alia*, the issuance and sale of the New Rio Equity and (iii) approval of either the Proposed Purchaser or a Prevailing Bidder, as applicable, as the purchaser of the Assets and New Rio Equity; (f) approving the proposed Notice of (A) Proposed Sale of Assets

---

[4] The assets and equity interests identified in (a)(1), (a)(2), and (a)(3) of this paragraph are collectively referred to herein as the "Assets." The new membership interests in reorganized Rio identified in (a)(4) of this paragraph are referred to herein as the "New Rio Equity."

and Equity Interests Free and Clear of Liens, Claims and Encumbrances, (B) Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (C) Hearing on Approval Thereof, and (D) Bidding Procedures in Connection with the Proposed Sale, a form of which is attached hereto as **Exhibit "B"** (the "Auction and Sale Hearing Notice"), and the proposed Notice of Proposed Assumption and Assignment of Certain Executory Contracts and Unexpired Leases and the Fixing of the Cure Costs Associated Therewith, a form of which is attached hereto as **Exhibit "C"** (the "Assumption Notice"); and (g) granting such other relief as is fair and equitable, and to which the Debtors may show themselves justly entitled.

## Terms of the Agreements

6. Pursuant to the Sale Motion, the Rio Plan and the terms of the Agreements, the Debtors seek to sell, *inter alia*, certain assets of Gas, substantially all the assets of Shale and Barnett, and the New Rio Equity, as well as assume and/or assign certain executory contracts and unexpired leases. For a more detailed discussion of the assets and interests to be sold and underlying transactions, see the Sale Motion, the Agreements, and Rio Plan filed substantially contemporaneous herewith.

## The Proposed Bidding Procedures

7. Pursuant to Bankruptcy Rule 6004(f), sales of property outside the ordinary course of business may be by private sale or auction. The Debtors believe that good cause exists to sell the Assets and New Rio Equity at auction. An auction conducted substantially in accordance with the Bidding Procedures will enable the Debtors to obtain the highest and best offer for the Assets and New Rio Equity, thereby maximizing the value of the Assets and New Rio Equity of these estates for the benefit of the creditors.

Dallas 1540294v.14

8.  Certain of the key terms of the Bidding Procedures are highlighted as follows:[5]

- <u>Notice of Auction and Sale Hearing</u>.  Within three (3) business days following the entry of the Bidding Procedures Order (defined below), the Debtors will cause service of the Auction and Sale Hearing Notice by first class mail, postage prepaid, to: (i) all potential purchasers previously identified or solicited by Debtors during their prepetition sale efforts and any additional parties who have previously expressed an interest in potentially acquiring the Assets or the assets/equity of Rio (the "<u>Rio Assets</u>") at any time; (ii) all other potentially interested parties identified by Debtors in their business judgment as a potential purchaser (collectively, with the parties identified in (i) above, the "<u>Potential Purchasers</u>"); (iii) the Office of the United States Trustee; (iv) counsel for the Proposed Purchaser; (v) counsel for (a) Bank of Montreal in its capacity as administrative agent under that certain First Lien Credit Agreement dated March 31, 2006, by and among CDX Acquisition Company, LLC and CDX Gas, LLC, as borrowers, and various financial institutions from time to time thereto (the "<u>First Lien Agent</u>") and (b) Credit Suisse in its capacity as administrative agent under that certain Second Lien Credit Agreement dated as of March 31, 2006, by and among, CDX Acquisition Company, LLC and CDX Gas, LLC, as borrowers, and various financial institutions from time to time a party thereto (the "<u>Second Lien Agent</u>," and collectively with the First Lien Agent, the "<u>Agents</u>"); (vi) all parties who are known to possess or assert a lien, claim, encumbrance or interest in or upon any of the Assets or Rio Assets; (vii) any applicable federal, state and local regulatory or taxing authority, recording office or any governmental entity which has a reasonably known interest in the relief requested in the Sale Motion and the Rio Plan; (viii) all parties on the most current master service list filed in the Cases; (ix) all creditors on the Debtors' consolidated creditor matrix; and (x) all counterparties to executory contracts and unexpired leases identified in the Agreements for assumption and/or assignment.[6]

- <u>Qualified Bidder</u>.  To ensure that only bidders with a serious interest in purchasing the Assets and New Rio Equity participate in the bidding process, the Bidding Procedures provide for certain minimal requirements for a potential bidder to become a "Qualified Bidder."  These requirements include, but are not limited to, delivery to the Debtors, so as to be received no later than 5:00 p.m. Central Time on **[TBD]** of (i) an executed confidentiality agreement, (ii) financial and other information that allows the Debtors, in consultation with the Agents, to make a reasonable determination as to such bidder's ability to consummate the transactions contemplated by the

---

[5] To the extent of any conflict between this summary and the terms of the Bidding Procedures contained in **Exhibit "A"** hereto, the terms of **Exhibit "A"** shall control.  All capitalized terms not specifically defined in the following summary shall have the meaning ascribed in the Bidding Procedures attached hereto as **Exhibit "A"**.

[6] The inclusion of any document on the list of contracts in the Agreements for assumption and/or assignment shall not constitute or be deemed to be a determination or admission by the Debtors or the Proposed Purchaser that such document is, in fact, an executory contract or unexpired lease within the meaning of the Bankruptcy Code (all rights with respect thereto being expressly reserved).

Agreements (the "Transactions"), and (iii) such other written evidence as may be requested by the Debtors or their agents, advisors, or representatives, from time to time. The Debtors, in consultation with the Agents, shall make an initial determination as to which prospective bidders have qualified to become a Qualified Bidder by **[TBD]** and give prompt notice thereof to the Agents. The Proposed Purchaser is and shall be deemed to be a Qualified Bidder for all purposes.

- Due Diligence. The Bidding Procedures permit all Qualified Bidders an opportunity to participate in the diligence process. Any person conducting due diligence must complete their due diligence by **[TBD]**.

- Form and Content of Competing Proposals. The Bidding Procedures require that Competing Proposals (as defined below), among other things: (i) be accompanied by executed "clean" versions of the APA and Subscription Agreement (together with a blackline reflecting how such agreements vary from the original APA and Subscription Agreement); (ii) identify the cash consideration to be paid for the Assets and New Rio Equity; (iii) include a letter setting forth (a) the identity of the bidder (including an authorized representative thereof) making the Competing Proposal and the identity of all Persons having direct or indirect ownership or control of such bidder, (b) such bidder's counsel, (c) contact information for such bidder, its authorized representative and its counsel, and as to each, such person's full name, company or firm, physical address or other address at which such person receives overnight deliveries, telephone number, facsimile number and email address, (d) an acknowledgment that the bidder (1) has had an opportunity to examine the assets and liabilities of the Debtors prior to making its offer, (2) has relied solely upon its own independent review, investigation and/or inspection of any documents in making its bid and (3) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express or implied, by operation of law or otherwise, regarding the Transactions or the completeness of any information provided in connection with the implementation of the Bidding Procedures, in each case except as expressly stated in its Competing Proposal, (e) a representation that the total consideration to be paid satisfies the Minimum Overbid Requirement (as defined below), (f) an acknowledgement that such bidder submits to the core jurisdiction of the Court and will waive the right to a jury trial, to the extent any such right exists, (g) an acknowledgement that such bidder is aware of the collusive bidding provisions contained in 11 U.S.C. § 363(n) and will comply with such provisions, and (h) an acknowledgement that sale of the Assets and New Rio Equity is to be for cash consideration and, except as provided in the Agreements, shall be on an "as is, where is" basis; (iv) contain evidence of financial ability to consummate the transaction; (v) confirm that the representative of the bidder who will be attending the Auction is, and at the Auction will be, duly authorized to both bid on behalf of such bidder at the Auction, and enter into and bind such bidder to the applicable Agreements; (vi) contain a written acknowledgment that such bid is binding upon the

bidder submitting the bid and is unconditional and not contingent upon any due diligence investigation, or the receipt of financing, or any other event that is in addition to or more burdensome than the conditions set forth in the Agreements; (vii) contain written evidence that the bidder has the requisite corporate or similar authority to consummate the Competing Proposal; (viii) contain a written acknowledgment that such bid is irrevocable until the later of (a) eleven (11) days after the entry of the Sale Order and the Confirmation Order (as defined in the Bidding Procedures), (b) actual consummation of the Transactions if such bidder is designated as Back-Up Bidder (as defined below) for the Transactions in the Sale Order and the Confirmation Order, and (c) [**TBD**], if such bid is approved by the Court as a Prevailing Bid (as defined below); (ix) be accompanied by a cash deposit equal to five percent (5%) of the proposed consideration to be paid under such Competing Proposal(s);[7] (x) contain written evidence that the bidder can provide adequate assurance of its future performance under any executory contract or unexpired lease that is to be assumed and/or assigned as provided in the Agreements; (xi) be for both the Assets and New Rio Equity combined and provide a bid that exceeds the aggregate purchase price contained in the Agreements by $4,350,000.00 (the "Minimum Overbid Requirement"); (xii) contain a written statement that the bidder understands and acknowledges that the Assets and New Rio Equity are being sold as a combined transaction and that bids will not be accepted for only one or the other of the Assets or the New Rio Equity; and (xiii) be supplemented with such other information as Debtors may request.  Each such proposal that contains all of the foregoing shall be a "Competing Proposal." A Qualified Bidder that does not submit a Competing Proposal in accordance with these procedures shall cease to be a Qualified Bidder and shall be disqualified from further participation in the bidding process, making a bid for any of the Assets or New Rio Equity or participation in the Auction.

- Competing Proposals Deadline.  The Debtors are requesting a deadline for submission of Competing Proposals of 5:00 p.m. Central Time on [**TBD**] (the "Bid Deadline").  Within 24 hours following the Bid Deadline, the Debtors shall forward copies of all Competing Proposals to counsel for the Proposed Purchaser, each Qualified Bidder that properly submitted a Competing Proposal, and counsel for each Agent.

- Auction.  The Auction will take place on [**TBD**], commencing at 11:00 a.m. Central Time at the offices of Vinson & Elkins L.L.P., 1001 Fannin Street, Suite 2500, Houston, Texas  77002-6760.  All bids shall be for both the Assets and the New Rio Equity.  No bids for one or the other of the Assets or the New Rio Equity will be accepted.  All Qualified Bidders, or their authorized representatives, must be physically present or present via teleconference at the Auction.  Only Qualified Bidders may present bids or overbids at any time

---

[7] Such deposit shall be deposited in an escrow account pursuant to the terms of an escrow agreement substantially in the form set forth on **Exhibit "D"** attached hereto.  Any bidder establishing an escrow account in accordance with these Bidding Procedures will be required to comply with the information requirements of the USA Patriot Act.

during the Auction and only a Qualified Bidder can be a purchaser of the Assets and New Rio Equity under the Bidding Procedures. Upon the commencement of the Auction, Debtors shall announce the highest or otherwise best Competing Proposal, and identify the distinctions between such Competing Proposal and the Agreements. Minimum overbid increments at the Auction shall be in the amount of not less than $250,000.00 with respect to the Assets and New Rio Equity.

- Selection of the Prevailing Bid and Bidder. Upon conclusion of the Auction, Debtors, in consultation with the Agents and subject to Court approval in regard to consummation of the Transactions, will identify (i) the highest or otherwise best Competing Proposal for the Assets and New Rio Equity (the "Prevailing Bid"), (ii) the bidder who submitted such Competing Proposal (the "Prevailing Bidder"), (iii) the next highest or otherwise best Competing Proposal (the "Back-Up Bid"), and (iv) the bidder who submitted such Competing Proposal (the "Back-Up Bidder").

- Failure to Consummate a Prevailing Bid / Binding Nature of Back-Up Bidder. If for any reason a Prevailing Bidder fails to timely consummate the transactions contemplated by its Prevailing Bid, the Sale Order, and the Confirmation Order, the Debtors may declare a Back-Up Bidder as having submitted the highest or otherwise best bid (and such Back-Up Bidder shall become the Prevailing Bidder) and seek to consummate a Back-Up Bid without further approval by the Court. The Back-Up Bidder for any proposed sale shall be deemed to keep its offer open until the applicable sale to a Prevailing Bidder is actually consummated; provided that the Proposed Purchaser may not be compelled to serve as the Back-Up Bidder absent its consent.

- Deadline to File Objections. Any objection to the Prevailing Bid, including any objections to the assumption and assignment of executory contracts and unexpired leases, must be filed and served upon (i) counsel to the Debtors, (ii) the Prevailing Bidder and its counsel, (iii) counsel to the First Lien Agent, (iv) counsel to the Second Lien Agent, and (v) the Office of the United States Trustee, so as to be actually received no later than 12:00 p.m. Central Time on [**TBD**].

- Break-Up Fee. The Debtors have agreed to provide the Proposed Purchaser a break-up fee up to $4,100,000.00, if, *inter alia*, the Proposed Purchaser is not the Prevailing Bidder for the Assets and New Rio Equity (the "Break-Up Fee"). See paragraph 15 herein for a description of the other possible fees and expense reimbursements requested hereunder.

- Effect of Bidder Becoming the Prevailing Bidder. If a bidder other than the Prospective Purchaser becomes a Prevailing Bidder, the following shall occur: (i) the terms of the Agreements shall be deemed amended to provide the remedy of specific performance to the Prevailing Bidder, on the one hand, and

      the Debtors, on the other hand; (ii) the deposit submitted by the Prevailing Bidder shall be utilized by the Debtors to pay the Break-Up Fee to the Prospective Purchaser as provided in the Bidding Procedures Order; (iii) the Prevailing Bidder shall not be entitled to any break-up fee or expense reimbursement and the Agreements shall be deemed amended to delete such provisions; (iv) to the extent any Prevailing Bidder's deposit is used to pay any of the Break-Up Fee or expense reimbursement to the Prospective Purchaser and such Prevailing Bidder is entitled to the return of such deposit, then: (a) any balance of the escrowed deposit shall be returned to the Prevailing Bidder; and (b) any deficiency shall be entitled to an administrative claim (the "<u>Deposit Administrative Claim</u>") under 503(b)(1) of the Bankruptcy Code and all liens, security interests and super priority administrative claims of the Second Lien Agent and Second Lien Lenders (as defined in the APA) shall be subordinate to the payment of the Deposit Administrative Claim.

9. The foregoing Bidding Procedures provide an appropriate framework for selling the Assets and New Rio Equity and will enable the Debtors to review, analyze and compare all bids received to determine which bid is in the best interests of the Debtors' estates and creditors. Therefore, the Debtors respectfully request that this Court approve the Bidding Procedures.

10. Further, the Debtors seek authority, but not direction, to permit the Proposed Purchaser and Potential Purchasers, who have delivered to the Debtors an executed confidentiality agreement in form and substance substantially the same as that attached hereto as **Exhibit "E"**, to review agreements and documents that contain provision(s) limiting or prohibiting the disclosure of certain information. The Debtors believe that the disclosure of such agreements would be necessary to maximize the value of the Assets and New Rio Equity. Because those agreements would be disclosed under a confidentiality agreement, the interests of the counterparty to such agreements would not be harmed.

### Notice of Auction and Sale Hearing / Assumption Notice

11. Under Bankruptcy Rule 2002(a) and (c), the Debtors are required to notify their creditors of the proposed sale of the Assets and New Rio Equity, including a disclosure of the time and place of the Auction, the terms and conditions of the sale, and the deadline for filing

any objections thereto.  The proposed Auction and Sale Hearing Notice and Assumption Notice contain the type of information required under Bankruptcy Rule 2002(c), and also include information on the Bidding Procedures, the Bid Protections, and proposed cure amounts under assigned contracts.  This information will enable interested parties to participate in the Auction and Sale Hearing if they choose.  Accordingly, the Debtors request that this Court approve the form and content of the Auction and Sale Hearing Notice and Assumption Notice.

12. The Debtors have served this Motion by the electronic court filing system (ECF) and first class United States mail, postage prepaid, as the case may be, on the parties listed on Debtors' Master Service List.  The Debtors will also serve a copy of this Motion, the order approving this Motion, and the Auction and Sale Hearing Notice on all Potential Purchasers. The Debtors propose to serve the Auction and Sale Hearing Notice, together with the Bidding Procedures, within three business days after the entry of the Order approving the relief requested herein (the "<u>Bidding Procedures Order</u>"), by the electronic court filing system or first-class United States mail, postage prepaid, as the case may be, on the parties identified in paragraph 8 herein.

13. Within three business days following the entry of the Bidding Procedures Order, the Debtors will cause service of (i) the (completed) Assumption Notices to all parties on the most current master service list on file in these Cases and (ii) the <u>applicable</u> (completed) Assumption Notice to all counterparties to executory contracts and unexpired leases identified in the Agreements for assumption and/or assignment.[8]

---

[8] The inclusion of any document on the list of contracts in the Agreements for assumption and/or assignment shall not constitute or be deemed to be a determination or admission by the Debtors or the Proposed Purchaser that such document is, in fact, an executory contract or unexpired lease within the meaning of the Bankruptcy Code (all rights with respect thereto being expressly reserved).

Dallas 1540294v.14

14. The notices to be provided and the method of service proposed herein constitute good, proper and adequate notice of the sale of the Assets and New Rio Equity and the proceedings to be had with respect thereto (including, but not limited to, the Auction and the Sale Hearing). Therefore, the Debtors respectfully request that this Court approve the foregoing notice procedures.

### Requested Break-Up Fees and Expense Reimbursement

15. Certain of the key terms of the Bid Protections, as provided in the Agreements, are highlighted as follows:[9]

- If, after the Court has entered the Confirmation Order and Sale Order, Proposed Purchaser (A) terminates either the APA or Subscription Agreement because the Debtors have breached a covenant or agreement such that certain conditions to closing have not been satisfied or waived and (B) has not itself breached in any material respect any of its respective representations, warranties, covenants or agreements contained in the applicable Agreement, then the Debtors shall pay to Prospective Purchaser and Prospective Purchaser shall be entitled to receive, as its sole and exclusive remedy, a break-up fee in the amount of $4,100,000.

- If all or a portion of the Assets or New Rio Equity are sold to an entity other than the Proposed Purchaser or its affiliates, then the Debtors shall pay to the Proposed Purchaser and the Proposed Purchaser shall be entitled to receive, as its sole and exclusive remedy, a break-up fee in the amount of $4,100,000.

- If, after the Court has entered the Confirmation Order and Sale Order, Proposed Purchaser (A) terminates either the APA or Subscription Agreement because the Debtors have breached a representation or warranty such that certain conditions to closing have not been satisfied or waived and (B) has not itself breached in any material respect any of its respective representations, warranties, covenants or agreements contained in the applicable Agreement, then the Debtors shall pay to the Proposed Purchaser and the Proposed Purchaser shall be entitled to receive, as its sole and exclusive remedy, a break-up fee in the amount of $1,000,000.

- If (A) either the Debtors or the Proposed Purchaser terminates either the APA or the Subscription Agreement because the Court has not entered the Sale Order and such Sale Order has not become a Final Order (as defined in the

---

[9] To the extent of any conflict between this summary and the terms of the Agreements, the terms of the Agreements shall control.

Agreements) on or before July 15, 2009, and the related condition to closing has not been satisfied or waived (and the date set forth in such conditions have not been extended by mutual agreement of the Debtors and Proposed Purchaser) and the Proposed Purchaser is not otherwise entitled to a break-up fee, and (B) the terminating party has not itself breached in any material respect any of its respective representations, warranties, covenants or agreements contained in the applicable Agreement, then the Debtors shall pay to the Proposed Purchaser, and the Proposed Purchaser shall be entitled to receive, as its sole and exclusive remedy, a break-up fee in the amount of $1,000,000.

- If the Proposed Purchaser (A) terminates either the APA or Subscription Agreement because (i) the Court has not entered the Bidding Procedures Order authorizing payment of the break-up fees under the terms and conditions, and in the amounts set forth in the Agreements, or (ii) the failure to satisfy the closing condition as set forth in Section 6.02(g) of the APA (relating to the absence of certain notices that could be reasonably expected to result in a Material Adverse Effect (as defined in the APA without giving effect to clause (d) included in the definition thereof)), and the failure of either such closing condition has not been satisfied or waived and (B) has not itself breached in any material respect any of its respective representations, warranties, covenants or agreements contained in the Agreements, then the Debtors shall pay to the Proposed Purchaser, and the Proposed Purchaser shall be entitled to receive, as its sole and exclusive remedy, the Expense Reimbursement (as defined in the Agreements); provided, however, that no Expense Reimbursement paid or payable by the Debtors to the Proposed Purchaser shall exceed $500,000 in the aggregate.

**The Break-Up Fees and Expense Reimbursement Provisions are Fair and Reasonable**

16.     Although the Debtors have determined in their reasonable business judgment that an auction sale of the Assets and New Rio Equity at this time will result in the highest and best price for the Assets and New Rio Equity, the Auction will be enhanced and value maximized only if the Proposed Purchaser can be designated as a stalking horse and afforded the requested bidding protections.  The Debtors request that the Court approve the bidding protections requested herein for the Proposed Purchaser as such are reasonable and customary in similar circumstances.

17.     The payment of a break-up fee and expense reimbursement is normal and customary in transactions of this nature.  Such fees frequently have been approved in connection

Dallas 1540294v.14

with asset sales in other chapter 11 cases. Break-up fees are a vital means by which a debtor-in-possession can manage value maximization risk by setting a value floor for assets to be conveyed; this is a key benefit to the Debtors and their estates and weighs heavily in favor of approving the Break-Up Fee. Moreover, without prompt approval of the Break-Up Fee, the sale process would be substantially hampered. Such fees encourage an initial purchaser to invest the time, effort and money necessary to consummate the purchase of the Assets and New Rio Equity, despite the possibility that such purchaser may not ultimately acquire the property. A break-up fee is an important tool to be used to encourage bidding. Court approval of the bidding protections is necessary, reasonable, and in the best interests of the Debtors, their estates and creditors.

18.   The determination of whether a break-up fee should be allowed is made based on whether the fees and expenses are necessary to preserve the value of the estate. *In re O'Brien Environmental Energy, Inc.*, 181 F.3d 527, 534 (3d Cir. 1999). The considerations that underlie a debtor's business judgment to pay a break-up fee are relevant to the Court's determination of the request. *Id.* Indeed, courts have evaluated break-up fee arrangements under the business judgment rule standard. *Cottle v. Storer Communications, Inc.*, 849 F.2d 570 (11th Cir. 1988); *CRTF Corp. v. Federated Dep't Stores*, 683 F.Supp. 422 (S.D.N.Y. 1988); *In re Integrated Res., Inc.*, 147 B.R. 650, 657 (S.D.N.Y. 1992), *appeal dismissed by* 3 F.3d 49 (2d Cir. 1993); *see also In re Twenver, Inc.*, 149 B.R. 954 (Bankr. D. Colo. 1992).

19.   It is well-established that "[a] bankruptcy court should uphold a break-up fee which was not tainted by self-dealing and was the product of arm's-length negotiations." *In re Integrated Res., Inc.*, 147 B.R. at 658. In the instant case, the proposed break-up fee and bid protections have been the product of good faith, arm's-length negotiations between the Debtors

Dallas 1540294v.14

and the Proposed Purchaser.  The break-up fee is up to approximately 4% of the cash consideration to be received by the Debtors under the Proposed Purchaser's bid.  It is the Debtors' business judgment that the break-up fee is fair and reasonable in the perspective of the time, effort, cost and expense that the Proposed Purchaser will have incurred in negotiating the Agreements and will continue to incur and the aggregate consideration to be paid by the Proposed Purchaser.

20. Further, the break-up fee is necessary to enhance and preserve the value of the Assets and New Rio Equity for the Debtors' estates.

21. A fee up to approximately 4% is well within the spectrum of break-up fees approved by bankruptcy courts in chapter 11 cases.  *See e.g., In re VarTec Telecom, Inc.,* Case No. 04-81694 (SAF) (Bankr. N.D. Tex., November 23, 2004 and April 15, 2005) (court approved a break-up fee of approximately 3% with respect to two sales of assets); *In re Enron Corp.*, Case No. 01-16034 (AJG) (Bankr. S.D.N.Y., April 8, 2004) (court approved break-up fee equal to 5% of the purchase price); *In re TransCom USA Management Co., L.P.*, Case No. 01-35158 (KKB) (Bankr. S.D. Tex., February 12, 2002) (court approved a break up fee of more than 3.6% of the purchase price for the assets); *In re Ameriserve*, Case No. 00-0358 (PJW) (Bankr. D. Del., September 27, 2000) (court approved a break-up fee of 3.64% or $4,000,000 in connection with $110,000,000 sale); *In re Montgomery Ward Holding Corp., et al.*, Case No. 97-1409 (PJW) (Bankr. D. Del., June 15, 1998) (court approved Break Up Fee of 2.7%, or $3,000,000, in connection with $110,000,000 sale of real estate assets); *see also Integrated Res.*, 147 B.R. at 648; *In re Crowthers McCall Pattern, Inc.*, 113 B.R. 877, 879 (Bankr. S.D.N.Y. 1990); *In re 995 Fifth Ave. Assocs., L.P.*, 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1989); *In re Twenever*, 149 B.R. at 957

(holding a topping fee of 1% to 2% is generally found to be reasonable in a majority of cases approving such fees).

22. As stated, the Agreements are subject to higher and better offers received pursuant to the Bidding Procedures. If higher and better offers emerge, they will be considered with reference to and by comparison to the terms of the Agreements. Therefore, a break-up fee should be approved to maximize the value of the Assets and New Rio Equity, and it does not prejudice the Debtors' estates.

### Permission to Establish Escrow Accounts

23. Pursuant to the terms of the Agreements, and contemporaneously with the execution of the Agreements, the Proposed Purchaser is required to deposit five percent (5%) of the aggregate purchase price for the Assets and New Rio Equity (the "Proposed Purchaser's Deposit") with JPMorgan Chase Bank, N.A. ("Chase") in an interest-bearing escrow account. The Debtors request authority to enter into a deposit escrow agreement with Chase, substantially in the form attached hereto as **Exhibit "F"**, for the purpose of administering the Proposed Purchaser's Deposit.

24. Additionally, pursuant to the terms of the Bidding Procedures, each Competing Proposal must be accompanied by a cash deposit equal to five percent (5%) of the proposed consideration to be paid under such Competing Proposal (each, an "Overbid Deposit"). The Debtors request authority to open an escrow account(s) with Chase, pursuant to an escrow agreement substantially in the form attached hereto as **Exhibit "D"**, for the purpose of administering each Overbid Deposit.

### PRAYER

**WHEREFORE** the Debtors respectfully request that the Court (a) approve the Bidding Procedures and Bid Protections for the Proposed Purchaser as set forth herein; (b) set the date for

the Auction; (c) set the date for the Sale Hearing and Confirmation Hearing; (d) approve the Auction and Sale Hearing Notice and Assumption Notice; and (e) grant such other relief, both at law and in equity to which they may be justly entitled.

Dated: April 21, 2009

        Respectfully submitted,

        **VINSON & ELKINS LLP**

By:  /s/ *John E. Mitchell*
     Harry Perrin, SBT #1579800
     John E. West, SBT #21202500
     First City Tower
     1001 Fannin Street, Suite 2500
     Houston, TX 77002-6760
     Tel:  713.758.2222
     Fax:  713.758.2346
     hperrin@velaw.com
     jwest@velaw.com

     and

     John E. Mitchell, SBT #00797095
     L. Prentiss Cutshaw, SBT #24059639
     Trammell Crow Center
     2001 Ross Avenue, Suite 3700
     Dallas, Texas 75201
     Tel:  214.220.7700
     Fax: 214.999.7787
     jmitchell@velaw.com
     pcutshaw@velaw.com

     **ATTORNEYS FOR THE DEBTORS**