IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **CDX Gas, LLC,** *et al.* [1] | § | **CASE NO. 08-37922** |
| | § | |
| | § | **(Chapter 11)** |
| **DEBTORS.** | § | **(Jointly Administered)** |
| | § | |

**MOTION OF THE DEBTORS FOR AN ORDER (A) APPROVING BIDDING PROCEDURES AND BID PROTECTIONS IN CONNECTION WITH THE SALE OF CERTAIN ASSETS OF THE ESTATES TO DOMINION EXPLORATION & PRODUCTION, INC.; (B) SCHEDULING AN AUCTION AND HEARING TO CONSIDER APPROVAL OF THE SALE; (C) APPROVING NOTICE RELATING TO THE SALE; AND (D) GRANTING RELATED RELIEF**

A HEARING WILL BE CONDUCTED ON THIS MATTER ON JUNE 2, 2009 AT 10:30 A.M. IN COURTROOM 401, 515 RUSK STREET, HOUSTON, TEXAS 77002.

THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 23 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEYS.

---

[1] The Debtors are: (1) CD Exploration, LLC, (2) CDX Acquisition Company, LLC, (3) CDX Barnett, LLC, (4) CDX Bishop Creek, LLC, (5) CDX East, LLC, (6) CDX Gas International, LLC, (7) CDX Gas, LLC, (8) CDX Isolate, LLC, (9) CDX Minerals, LLC, (10) CDX North America, LLC, (11) CDX Operating, LLC, (12) CDX Panther, LLC, (13) CDX Plum Creek, JV, (14) CDX Sequoya, LLC, (15) CDX Services, LLC, (16) CDX Shale, LLC, (17) CDX Tapicito, LLC, (18) CMV Joint Venture, (19) Arkoma Gathering, LLC, (20) Cahaba Gathering, LLC, (21) CDX Canada, Co., and (22) CDX Rio, LLC.

**TO THE HONORABLE LETITIA Z. PAUL,**
**UNITED STATES BANKRUPTCY JUDGE:**

CDX Gas, LLC, and its affiliated debtor entities, as debtors and debtors in possession (collectively, the "Debtors"), by and through their undersigned counsel, hereby file this *Motion of the Debtors for an Order (A) Approving Bidding Procedures and Bid Protections in Connection with the Sale of Certain Assets of the Estates to Dominion Exploration & Production, Inc.; (B) Scheduling an Auction and Hearing to Consider Approval of the Sale; (C) Approving Notice Relating to the Sale; and (D) Granting Related Relief* (the "Motion").  In support of the Motion, the Debtors respectfully state as follows:

**JURISDICTION, VENUE, AND PROCEDURAL BACKGROUND**[2]

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157.  This Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

2.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      On December 12, 2008 and April 1, 2009 (collectively, the "Petition Date"),[3] the Debtors each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), thereby commencing the above-captioned cases (the "Cases").

4.      Since the Petition Date, the Debtors have continued to operate and manage their businesses as debtors in possession pursuant to Bankruptcy Code §§ 1107(a) and 1108.  No official committee of creditors has been appointed in these Cases.

---

[2] The factual background of the Debtors' business and the circumstances precipitating the filing of the Cases has been previously set forth in detail.  Please refer to the Debtors' prior motion filed at docket number 5 for a company overview including the company's corporate structure, assets and operations, management and employees, financial performance and debt obligations.
[3] Arkoma Gathering, LLC, Cahaba Gathering, LLC, CDX Canada, Co., and CDX Rio, LLC filed voluntary petition for relief under the Bankruptcy Code on April 1, 2009.  All other Debtors filed on December 12, 2008.

## RELIEF REQUESTED

5.      By this Motion, Debtors request that, pursuant to Bankruptcy Code §§ 105, 363, 365, and 1146 and Rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Court enter an order (a) approving the bidding procedures, set forth in paragraph 8 below (the "Bidding Procedures"), in connection with the proposed sale free and clear by the Debtors of certain assets of CDX Gas, LLC ("Gas") located in Boone, Fayette, and Raleigh Counties, West Virginia (the "Assets"), and the assumption and assignment of certain executory contracts and unexpired leases related to such sale; (b) approving break-up fees, expense reimbursement, and overbid protections (the "Bid Protections") to Dominion Exploration & Production, Inc. (the "Proposed Purchaser") in accordance with that certain Purchase and Sale Agreement dated as of May 8, 2009 by and between Gas and the Proposed Purchaser (the "PSA"), a copy of which is attached to that certain *Debtors' Motion for an Order Approving the Sale of Assets Free and Clear of Liens, Claims and Encumbrances and the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases to Dominion Exploration & Production, Inc.* filed contemporaneously herewith (the "Sale Motion"); (c) approving the Proposed Purchaser as the "stalking horse" bidder in connection with the Debtors' solicitation of higher and better offers for the Assets; (d) setting a date for an auction of the Assets (the "Auction"); (e) scheduling a hearing (the "Sale Hearing") to approve such sale of the Assets (the "Sale"); (f) approving notice related to the Sale; and (g) granting such other relief as is fair and equitable, and to which the Debtors may show themselves justly entitled.

## Terms of the PSA

6.      The Debtors seek to sell, *inter alia*, certain assets of Gas, as well as assume and assign certain executory contracts and unexpired leases, pursuant to the terms of the PSA.  For a

Dallas 1551530v.4

more detailed discussion of the assets to be sold and underlying transactions, see the Sale Motion and the PSA, filed contemporaneously herewith.

**<u>The Proposed Bidding Procedures</u>**

7.      Pursuant to Bankruptcy Rule 6004(f), sales of property outside the ordinary course of business may be by private sale or auction.  The Debtors believe that good cause exists to sell the Assets at auction.  An auction conducted substantially in accordance with the Bidding Procedures will enable the Debtors to obtain the highest and best offer for the Assets, thereby maximizing the value of the Assets of these estates for the benefit of the creditors.

8.      The Bidding Procedures are as follows:

- <u>Participation Requirements</u>.  In order to participate in the bidding process, each person (a "<u>Potential Bidder</u>") must first deliver to the Debtors and their counsel (a) an executed confidentiality agreement in form and substance substantially the same as that attached hereto as **<u>Exhibit "A"</u>** (the "<u>Confidentiality Agreement</u>"), and (b) a Deposit (as defined below).

- <u>Due Diligence</u>.  Upon execution of the Confidentiality Agreement, the Debtors will afford each Potential Bidder (each to thereafter be deemed a "<u>Qualified Bidder</u>") access to data related to the Assets.  The Proposed Purchaser may continue due diligence, including the submission of supplemental requests, up and until closing of the Sale.  Debtors are not obligated to furnish any information to any person except a Qualified Bidder. Any information and documents provided by Debtors to any Qualified Bidder shall be promptly and, where possible, contemporaneously provided to the Proposed Purchaser.  Any Qualified Bidder who desires to conduct due diligence or has a due diligence related request of the Debtors should contact Kyle Wood, email: <u>kyle.wood@cdxgas.com</u>.

- <u>Stalking Horse Bid</u>.  On May 8, 2009, Gas and the Proposed Purchaser entered into the PSA, subject to both Court approval and any higher and/ better offers which meet the requirements set forth herein.  The Proposed Purchaser is a Qualified Bidder

- <u>Qualified Bid</u>.  The Debtors will determine whether a bid qualifies as a "<u>Qualified Bid</u>" in consideration of the following: (a) the bid must be a written irrevocable offer from a Qualified Bidder containing written evidence of the non-conditional ability to consummate the Sale; (b) the bid must include evidence of authorization and approval indicating that the Qualified Bidder is duly authorized to perform the transactions in the bid and these

Bidding Procedures; (c) the bid must be for the entirety of the Assets; (d) the bid must identify the executory contracts and unexpired leases to be assumed and assigned to the Qualified Bidder; (e) the bid must contain terms that are better than the terms of the PSA with respect to the Assets; (f) the bid must not request or entitle the bidder to any termination or break-up fee, expense reimbursement or similar type of payment (unless the Qualified Bidder is the Proposed Purchaser); and (g) the bid must acknowledge and represent that the Qualified Bidder: (1) has had an opportunity to conduct any and all due diligence regarding the Assets prior to making its offer; (2) has relied solely upon its own independent review, investigation and/or inspection of the Assets in making its bid; and (3) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Assets, or the proposed transaction, or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in these Bidding Procedures or the PSA. The PSA is deemed a Qualified Bid.

- Bidder Purchase Agreement. All bids must include a clean and blacklined version of an agreement for the purchase of the Assets (the "Bidder Purchase Agreement") with (x) the clean version of the Bidder Purchase Agreement being a duly executed original substantially similar to and in the form of the PSA, signed by the Qualified Bidder and (y) a blacklined version showing all proposed changes from the PSA.

- Deposit. A Qualified Bid must be accompanied by a deposit (the "Deposit") in the amount of $500,000. The Deposit is to be delivered by the Qualified Bidder to a segregated debtor-in-possession account established by the Debtors, in the form of a wire transfer. Wire instructions may be obtained by e-mail request to pcutshaw@velaw.com.

- Additional Requirements for Bids. Bids must be: (a) in writing; (b) signed by an individual authorized to bind the Potential Bidder; and (c) received by e-mail or personal delivery no later than 12:00 noon Central on June 24, 2009 (the "Bid Deadline"), by (i) counsel for Debtors, Vinson & Elkins L.L.P., 1001 Fannin Street, Suite 2500, Houston, Texas 77002-6760, Attn: Harry Perring, email: hperrin@velaw.com; and (ii) counsel for the Proposed Purchaser, McGuireWoods LLP, 1345 Avenue of the Americas, 7th Floor, New York, NY 10105, Attn. Shawn R. Fox, Esq., email: Sfox@mcguirewoods.com.

- Initial Overbid. An initial overbid must meet the requirements herein and must be in an amount that is at least $5,310,000.

- No Conditions. No bid may be subject to a financing contingency. A Qualified Bid cannot be subject to due diligence, or any other condition or contingency less favorable to the Debtors than those set forth in the PSA.

Dallas 1551530v.4

- <u>Bankruptcy Court Approval</u>.  Any Qualified Bid, including that of the Proposed Purchaser (whether through the PSA or otherwise), selected as a Winning Bid (as defined below) shall be subject to the approval of the Court before the consummation of a Sale.

- <u>Auction Date and Time</u>.  If a Qualified Bid is timely submitted for the Assets, other than the Proposed Purchaser's bid contained in the PSA, then the Debtors shall conduct the Auction.  No later than June 25, 2009 at 5:00 p.m. Central, the Debtors will notify all Qualified Bidders, including the Proposed Purchaser, of the highest and best Qualified Bid(s).  The Auction will commence on June 27, 2009, at 10:00 am Central at the offices of Vinson & Elkins L.L.P., 1001 Fannin Street, Suite 2500, Houston, Texas  77002-6760, for consideration of Qualified Bids.  Only the authorized representatives of each of the Qualified Bidders that timely submitted a Qualified Bid, the Proposed Purchaser, and the Debtors shall be permitted to attend the Auction.

- <u>Auction Procedures</u>.  (a) All bids shall be made on an open basis, and participating Qualified Bidders, including the Proposed Purchaser, shall be entitled to be present for all bidding; and (b) the principals of each participating Qualified Bidder, and the material terms of each bid, shall be fully disclosed to all other participating Qualified Bidders, including the Proposed Purchaser, throughout the entire Auction.  If no Qualified Bid, other than the Proposed Purchaser's bid contained in the PSA, is received by the Bid Deadline, then no Auction shall take place, and the Debtors shall, at the Sale Hearing, request: (i) that the PSA be deemed the highest and best offer for the Assets, (ii) authority to proceed to close the Sale to the Proposed Purchaser pursuant to the PSA, and (iii) entry of an order approving the Sale.

- <u>Evaluation of Highest and Best Offer</u>.  The Debtors shall, promptly after the Bid Deadline: (a) evaluate all bids, if any, received, and (b) determine which bids, if any, constitute Qualified Bids.  During the course of the Auction, Debtors shall inform each participating Qualified Bidder which Qualified Bid or Bids reflect the highest and best offer(s).

- <u>Break-Up Fee and Expense Reimbursement</u>.  If an Auction occurs and a party other than the Proposed Purchaser is the Winning Bidder (as defined below) or the Debtors file a plan of reorganization or liquidation with the Court that does not contemplate the sale of the Assets to the Proposed Purchaser in accordance with the terms of the PSA, then the Proposed Purchaser shall be paid a break-up fee of $185,000 (the "<u>Break-Up Fee</u>"), which shall count as consideration in connection with any bid made by the Proposed Purchaser at the Auction.  If Gas is in a material breach of any of its obligations under the PSA, is unable to deliver a certificate certifying that the conditions to closing set forth in Section 10.1 of the PSA have been satisfied, or has failed to comply with Section 10.3.2 of the PSA by July 27, 2009 (but only with respect to those consents enumerated on Schedule 9.3, Part B of the PSA), the Proposed Purchaser shall be eligible to be reimbursed for its actual

documented out-of-pocket expenses (including professional fees) incurred in connection with the transactions contemplated by the PSA, including all those costs and expenses associated with diligence conducted by the Proposed Purchaser or its representatives to consummate the transactions, not to exceed $35,000 (the "Expense Reimbursement").

- Subsequent Bids. Debtors shall not consider any subsequent bid made at the Auction unless the bid is made by a Qualified Bidder who has previously made a Qualified Bid and such subsequent bid exceeds the previous highest and best bid by at least $125,000 in cash, except that the initial overbid must be in an amount of at least $5,310,000.

- Other Terms. At the conclusion of the Auction, the winning bid shall be the bid made pursuant to these Bidding Procedures that represents, in Debtors' reasonable discretion the highest and best offer (the "Winning Bid"). The bidder submitting such Qualified Bid shall become the "Winning Bidder," and shall have such rights and responsibilities of the purchaser as set forth in the applicable Bidder Purchase Agreement. The Proposed Purchaser shall have standing to contest the Winning Bid selected by the Debtors. Debtors will not be deemed to have finally accepted any bid until the bid has been approved by the Court at the Sale Hearing. The Sale Hearing shall occur on June 30, 2009, unless adjourned by the Court.

- Expenses. Except as otherwise provided herein, any bidders presenting bids shall bear their own expenses in connection with their bid and the proposed sale, whether or not such sale is ultimately approved, in accordance with the terms of the purchase agreement executed by such bidders. The Proposed Purchaser shall recover the Break-Up Fee or the Expense Reimbursement as and to the extent due and payable as provided for in the PSA and these Bidding Procedures.

9. The foregoing Bidding Procedures provide an appropriate framework for selling the Assets and will enable the Debtors to review, analyze and compare all bids received to determine which bid is in the best interests of the Debtors' estates and creditors. Therefore, the Debtors respectfully request that this Court approve the Bidding Procedures.

10. Further, the Debtors seek authority, but not direction, to permit the Proposed Purchaser and each Qualified Bidder, who have delivered to the Debtors an executed Confidentiality Agreement, to review agreements and documents that contain provision(s) limiting or prohibiting the disclosure of certain information. The Debtors believe that the

disclosure of such agreements would be necessary to maximize the value of the Assets.  Because those agreements would be disclosed under a confidentiality agreement, the interests of the counterparty to such agreements would not be harmed.

## Notice of Auction and Sale Hearing

11.     Under Bankruptcy Rule 2002(a) and (c), the Debtors are required to notify their creditors of the proposed sale of the Assets, including a disclosure of the time and place of the Auction, the terms and conditions of the Sale, and the deadline for filing any objections thereto.  This Motion and the Sale Motion contain the type of information required under Bankruptcy Rule 2002(c), and also include information on the Bidding Procedures, the Bid Protections, and proposed cure amounts under assigned contracts.  This information will enable interested parties to participate in the Auction and Sale Hearing if they choose.  Accordingly, the Debtors request that this Court approve the form and content of this Motion and the Sale Motion as sufficient notice.

12.     The Debtors have served this Motion by the electronic court filing system (ECF) and first class United States mail, postage prepaid, as the case may be, on the parties listed on Debtors' Master Service List.  The Debtors will also serve a copy of this Motion and the order approving this Motion (the "Bidding Procedures Order") on (i) all potential purchasers previously identified by Debtors and any additional parties who may have an interest in potentially acquiring the Assets; (ii) all other potentially interested parties identified by Debtors in their business judgment as a potential purchaser of assets; (iii) the Office of the United States Trustee; (iv) counsel for the Proposed Purchaser; (v) counsel for (a) Bank of Montreal in its capacity as administrative agent under that certain First Lien Credit Agreement dated March 31, 2006, by and among CDX Acquisition Company, LLC and CDX Gas, LLC, as borrowers, and

various financial institutions from time to time thereto and (b) Credit Suisse in its capacity as administrative agent under that certain Second Lien Credit Agreement dated as of March 31, 2006, by and among, CDX Acquisition Company, LLC and CDX Gas, LLC, as borrowers, and various financial institutions from time to time a party thereto (vi) all parties who are known to possess or assert a lien, claim, encumbrance or interest in or upon any of the Assets; (vii) all applicable federal, state and local regulatory or taxing authorities, recording offices or any governmental entity which have a reasonably known interest in the relief requested in the Sale Motion; (viii) all parties on the most current master service list filed in the Cases; and (ix) all counterparties to executory contracts and unexpired leases identified in the PSA (and Sale Motion) for assumption and assignment.

13.     The notices to be provided and the method of service proposed herein constitute good, proper and adequate notice of the Sale of the Assets and the proceedings to be had with respect thereto (including, but not limited to, the Auction and the Sale Hearing).  Therefore, the Debtors respectfully request that this Court approve the foregoing notice procedures.

## Requested Break-Up Fees and Expense Reimbursement[4]

14.     If all or a portion of the Assets are sold to an entity other than the Proposed Purchaser, or the Debtors file a plan of reorganization or liquidation with the Court that does not contemplate the sale of the Assets to the Proposed Purchaser in accordance with the terms of the PSA, then the Debtors shall pay to the Proposed Purchaser and the Proposed Purchaser shall be entitled to receive, as its sole and exclusive remedy a break-up fee in the amount of $185,000 (the "Break-Up Fee").  If Gas is in a material breach of any of its obligations under the PSA, is unable to deliver a certificate certifying that the conditions to closing set forth in Section 10.1 of

---

[4] To the extent of any conflict between this summary of the break-up fee and expense reimbursement provisions of the PSA and the terms of the PSA, the terms of the PSA shall control.

the PSA have been satisfied, or has failed to comply with Section 10.3.2 of the PSA by July 27, 2009 (but only with respect to those consents enumerated on Schedule 9.3, Part B of the PSA), the Proposed Purchaser shall be eligible to be reimbursed for its actual documented out-of-pocket expenses (including professional fees) incurred in connection with the transactions contemplated by the PSA, including all those costs and expenses associated with diligence conducted by the Proposed Purchaser or its representatives to consummate the transactions, not to exceed $35,000 (the "Expense Reimbursement").

**The Break-Up Fee and Expense Reimbursement Provisions are Fair and Reasonable**

15.     Although the Debtors have determined in their reasonable business judgment that an auction sale of the Assets at this time will result in the highest and best price for the Assets, the Auction will be enhanced and value maximized only if the Proposed Purchaser can be designated as a stalking horse and afforded the requested bidding protections.  The Debtors request that the Court approve the bidding protections requested herein for the Proposed Purchaser as such are reasonable and customary in similar circumstances.

16.     The payment of a break-up fee or expense reimbursement is normal and customary in transactions of this nature.  Such fees frequently have been approved in connection with asset sales in other chapter 11 cases.  Break-up fees are a vital means by which a debtor-in-possession can manage value maximization risk by setting a value floor for assets to be conveyed; this is a key benefit to the Debtors and their estates and weighs heavily in favor of approving the Break-Up Fee.  Moreover, without prompt approval of the Break-Up Fee, the sale process would be substantially hampered.  Such fees encourage an initial purchaser to invest the time, effort and money necessary to consummate the purchase of the Assets, despite the possibility that such purchaser may not ultimately acquire the property.  A break-up fee is an

important tool to be used to encourage bidding. Court approval of the bidding protections is necessary, reasonable, and in the best interests of the Debtors, their estates and creditors.

17.     The determination of whether a break-up fee should be allowed is made based on whether the fees and expenses are necessary to preserve the value of the estate. *In re O'Brien Environmental Energy, Inc.*, 181 F.3d 527, 534 (3d Cir. 1999). The considerations that underlie a debtor's business judgment to pay a break-up fee are relevant to the Court's determination of the request. *Id.* Indeed, courts have evaluated break-up fee arrangements under the business judgment rule standard. *Cottle v. Storer Communications, Inc.*, 849 F.2d 570 (11th Cir. 1988); *CRTF Corp. v. Federated Dep't Stores*, 683 F.Supp. 422 (S.D.N.Y. 1988); *In re Integrated Res., Inc.*, 147 B.R. 650, 657 (S.D.N.Y. 1992), *appeal dismissed by* 3 F.3d 49 (2d Cir. 1993); *see also In re Twenver, Inc.*, 149 B.R. 954 (Bankr. D. Colo. 1992).

18.     It is well-established that "[a] bankruptcy court should uphold a break-up fee which was not tainted by self-dealing and was the product of arm's-length negotiations." *In re Integrated Res., Inc.*, 147 B.R. at 658. In the instant case, the proposed break-up fee and bid protections have been the product of good faith, arm's-length negotiations between the Debtors and the Proposed Purchaser. The break-up fee is approximately 3.7% of the cash consideration to be received by the Debtors under the Proposed Purchaser's bid. It is the Debtors' business judgment that the break-up fee is fair and reasonable in the perspective of the time, effort, cost and expense that the Proposed Purchaser will have incurred in negotiating the PSA and will continue to incur and the aggregate consideration to be paid by the Proposed Purchaser.

19.     Further, the break-up fee is necessary to enhance and preserve the value of the Assets for the Debtors' estates.

Dallas 1551530v.4

20.     A break-up fee of approximately 3.7% of the cash consideration to be received is well within the spectrum of break-up fees approved by bankruptcy courts in chapter 11 cases. *See e.g., In re VarTec Telecom, Inc.,* Case No. 04-81694 (SAF) (Bankr. N.D. Tex., November 23, 2004 and April 15, 2005) (court approved a break-up fee of approximately 3% with respect to two sales of assets); *In re Enron Corp.*, Case No. 01-16034 (AJG) (Bankr. S.D.N.Y., April 8, 2004) (court approved break-up fee equal to 5% of the purchase price); *In re TransCom USA Management Co., L.P.*, Case No. 01-35158 (KKB) (Bankr. S.D. Tex., February 12, 2002) (court approved a break up fee of more than 3.6% of the purchase price for the assets); *In re Ameriserve*, Case No. 00-0358 (PJW) (Bankr. D. Del., September 27, 2000) (court approved a break-up fee of 3.64% or $4,000,000 in connection with $110,000,000 sale); *In re Montgomery Ward Holding Corp., et al.*, Case No. 97-1409 (PJW) (Bankr. D. Del., June 15, 1998) (court approved Break Up Fee of 2.7%, or $3,000,000, in connection with $110,000,000 sale of real estate assets); *see also Integrated Res.*, 147 B.R. at 648; *In re Crowthers McCall Pattern, Inc.*, 113 B.R. 877, 879 (Bankr. S.D.N.Y. 1990); *In re 995 Fifth Ave. Assocs., L.P.*, 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1989); *In re Twenever*, 149 B.R. at 957 (holding a topping fee of 1% to 2% is generally found to be reasonable in a majority of cases approving such fees).

21.     As stated, the PSA is subject to higher and better offers received pursuant to the Bidding Procedures.  If higher and better offers emerge, they will be considered with reference and by comparison to the terms of the PSA.  Therefore, a break-up fee should be approved to maximize the value of the Assets, and it does not prejudice the Debtors' estates.

## PRAYER

**WHEREFORE** the Debtors respectfully request that the Court (a) approve the Bidding Procedures and Bid Protections for the Proposed Purchaser as set forth herein; (b) set **June 27, 2009** as the date for the Auction; (c) set **June 30, 2009** (or such other time thereafter as the

Dallas 1551530v.4

Court's calendar may accommodate), as the date for the Sale Hearing; (d) approve the notice related to the Sale of the Assets; and (e) grant such other relief, both at law and in equity to which they may be justly entitled.

Dated: May 8, 2009

Respectfully submitted,

**VINSON & ELKINS LLP**

By:   */s/ L. Prentiss Cutshaw*
     Harry Perrin, SBT #1579800
     John E. West, SBT #21202500
     First City Tower
     1001 Fannin Street, Suite 2500
     Houston, TX 77002-6760
     Tel:  713.758.2222
     Fax:  713.758.2346
     hperrin@velaw.com
     jwest@velaw.com

     and

     John E. Mitchell, SBT #00797095
     L. Prentiss Cutshaw, SBT #24059639
     Trammell Crow Center
     2001 Ross Avenue, Suite 3700
     Dallas, Texas 75201
     Tel:  214.220.7700
     Fax: 214.999.7787
     jmitchell@velaw.com
     pcutshaw@velaw.com

     **ATTORNEYS FOR THE DEBTORS**

Dallas 1551530v.4