IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| CDX Gas LLC, *et al.* | § | CASE NO.  08-37922 |
| | § | |
| Debtors. | § | Chapter 11 |
| | § | |
| | § | (Jointly administered) |
| | § | |
| | § | Relates to D.I. 517, 516 |

**LIMITED RESPONSE OF U.S. SPECIALTY INSURANCE COMPANY AND INDEMCO, LP TO CDX RIO, LLC'S DISCLOSURE STATEMENT FOR THE DEBTOR'S PROPOSED PLAN OF REORGANIZATION [D.I. 517, 516]**

NOW COME U.S. SPECIALTY INSURANCE COMPANY ("USSIC") and INDEMCO, LP ("IndemCo") (together, "Bonding Companies"), through undersigned counsel, and file this Limited Response (the "Response") to *Disclosure Statement for the Debtor's Proposed Plan of Reorganization* [D.I. 517] (the "Disclosure Statement"), filed in the above-styled, jointly administered bankruptcy cases (the "Bankruptcy Cases", or individually, a "Bankruptcy Case") on April 24, 2009 by CDX RIO, LLC ("CDX Rio"), and would show the Court the following:

## I.    BACKGROUND FACTS

1. CDX GAS, LLC ("CDX Gas") and certain of its affiliates and subsidiaries (collectively, the "2008 Debtors") commenced the Bankruptcy Cases in this Court on December 12, 2008 (the "2008 Petition Date") under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). On April 1, 2009 (the "2009 Petition Date"), CDX Rio, an affiliate of CDX Gas, and certain related entities (collectively, the "2009 Debtors" and with the 2008 Debtors, the "Debtors") commenced four additional Bankruptcy Cases under Chapter 11 of the Bankruptcy Code. The Debtors remain in possession of their property and continue to conduct their affairs as debtors and debtors-in-possession in these Bankruptcy Cases.

2.      The Bonding Companies are parties-in-interest, sureties and creditors of certain Debtors by virtue of certain bonds (the "<u>Bonds</u>") for which those Debtors are principal obligors. Specifically, as of the 2008 Petition Date, approximately <u>$922,449.18</u> in Bonds were issued and outstanding on behalf of principals CDX Gas, CDX Rio and a non-debtor affiliate, CDX Rockies, LLC ("<u>CDX Rockies</u>"). These Bonds run in favor of various parties, including, *inter alia*, the United States Minerals Management Service (the "<u>MMS</u>"), the United States Bureau of Land Management ("<u>U.S. BLM</u>") and the Oklahoma Corporation Commission (the "<u>OCC</u>"), among others (collectively, the "<u>Bond Beneficiaries</u>").

3.      The Bonds ensure the Debtors' compliance with applicable law and cover obligations to the Bond Beneficiaries. USSIC is the surety on the Bonds. IndemCo is the underwriter and a general agent in connection with certain matters related to the Bonds and to USSIC's surety business. (A list of the outstanding Bonds as of April 30, 2009 is attached to this Response as <u>Exhibit "A"</u>.) On March 9, 2009, the Bonding Companies filed a proof of claim with the Debtors' claims agent in connection with all the Bonds. The Bonding Companies are, *inter alia*, creditors of CDX Rio and parties in interest in CDX Rio's Bankruptcy Case.

4.      As of the 2008 Petition Date, the Bonding Companies were unaware of any Bond Beneficiary's having either made or delivered to the Bonding Companies any demand for payment, performance or other obligation in connection with the then-outstanding Bonds. This portion of the Bonding Companies' claim against the Debtors, including CDX Rio, was therefore undetermined as of the 2008 Petition Date. By the same token, however, the Bonding Companies are owed certain unpaid pre- and post-petition premiums and pre- and post-petition attorneys' fees and expenses. This portion of the Bonding Companies' claims is determined and ascertainable.

5.      CDX Rio filed the Disclosure Statement and the accompanying *Debtors' Plan of Reorganization* [D.I. 516] (the "<u>CDX Rio Plan</u>") on April 24, 2009. A hearing to approve the

Disclosure Statement is currently scheduled for May 26, 2009 at 12:00 p.m. (CDT) (the "<u>Disclosure Statement Hearing</u>"). The Bonding Companies file this Limited Response to the Disclosure Statement in order to address certain concerns they have with the Disclosure Statement and the CDX Rio Plan.

## II.     RESPONSE TO DISCLOSURE STATEMENT

6.      The Bonding Companies file this limited Response in order to preserve their rights regarding the Bonds and to highlight certain deficiencies in the Disclosure Statement and CDX Rio Plan. The Bonding Companies do not, in principle, oppose approval of the Disclosure Statement provided that their concerns are addressed. The Bonding Companies expressly reserve their right to amend, modify or supplement this Response as well as any of the arguments or concerns raised herein at any time, including at the Disclosure Statement Hearing.

7.      The Bonding Companies' reservations regarding the Disclosure Statement are two-fold. First, the Disclosure Statement lacks adequate information because, *inter alia*, it does not explain in sufficient detail how the Bonds will be treated under the CDX Rio Plan and/or how the Reorganized CDX Rio intends to comply with its obligations to the Bond Beneficiaries following the Effective Date.[1] Second, this Court should also deny approval of the Disclosure Statement because at least one provision in the CDX Rio Plan appears to render that plan patently unconfirmable.

**A.     The Disclosure Statement lacks adequate information because it does not sufficiently explain various issues related to the Bonds.**

8.      A disclosure statement must contain "adequate information" before a bankruptcy court may approve it. 11 U.S.C. § 1125 (2009). Section 1125 of the Bankruptcy Code defines "adequate information" as:

> Information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would

---

[1] All capitalized terms shall have the meanings ascribed to them in the Disclosure Statement and/or the CDX Rio Plan.

3

enable such a hypothetical investor of the relevant class to make an informed judgment about the plan, but adequate information need not include such information about any other possible or proposed plan and in determining whether a disclosure statement provides adequate information, the court shall consider the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information….

*Id*. § 1125(a)(1).

In practice, courts have characterized the phrase "adequate information" as information sufficient to permit the holders of claims against a debtor to make an informed judgment about the proposed plan. 11 U.S.C. § 1125(a)(1); *In re Texas Extrusion Corp.*, 844 F.2d 1142, 1157 (5th Cir. 1988), *cert. denied* 488 U.S. 926 (1988); *Westland Oil Dev. Corp. v. MCorp Mgmt. Solutions, Inc.*, 157 B.R. 100, 102-03 (S.D. Tex. 1993). A disclosure statement should provide creditors with enough information about the proposed plan for them to decide whether to approve its treatment of their claims. *In re Duratech Indus., Inc.*, 241 B.R. 291, 298 (Bankr. E.D.N.Y. 1999), *aff'd In re Duratech Indus., Inc.*, 241 B.R. 283 (E.D.N.Y. 1999).

9. From the Bonding Companies' perspective, the Disclosure Statement does not explain in adequate detail how the Bonds will be treated under the CDX Rio Plan and/or how the Reorganized CDX Rio intends to comply with its continuing obligations to the Bond Beneficiaries following the Effective Date. In its Schedule G filed on February 2, 2009, CDX Gas listed several of the Bonds as "executory contracts". (*See* CDX Gas Sch. G, cont. sht., pp. 20-22). On the other hand, CDX Rio did not list any of the Bonds for which it is principal as "executory contracts". (*See* CDX Rio Sch. G.). In light of this discrepancy, the Bonding Companies have some concern regarding the Bonds' treatment and whether CDX Rio believes the Bonds are executory contracts. Unfortunately, neither the Disclosure Statement nor the CDX Rio Plan mention the Bonds or the Bonding Companies. The Bonds also do not appear in the *Notice of Proposed Assumption and Assignment of Certain Executory Contracts and Unexpired Leases* [D.I. 592] (the "<u>Assumption Notice</u>") filed on May 20, 2009, which apparently sets forth the contracts and leases (including those of CDX Rio) that the EnerVest

4

Purchasers (or, if applicable, the Prevailing Bidder) intend to purchase at the Auction. CDX Rio's failure to mention the Bonds in these pleadings leads the Bonding Companies to one of two conclusions: 1) either CDX Rio does not believe the Bonds are executory contracts that require rejection or assumption, or 2) CDX Rio does believe the Bonds are executory contracts and it intends to reject them. Nothing in the Disclosure Statement or CDX Rio Plan indicates which of these two conclusions may be correct.

10. This is a critical omission. No matter which position CDX Rio actually holds as to the Bonds' treatment, its creditors (including the Bonding Companies) deserve to know what that position is. Although the Bonding Companies recognize that no plan or disclosure statement has to mention every executory contract specifically, CDX Rio's decision as to the Bonds—whatever it may be—is especially pertinent to a proper evaluation of the proposed Restructuring and New Equity sale. The Bonds are not just ordinary contracts. They insure that CDX Rio and the other Debtors continue to meet on a post-petition basis various requirements of state and federal law applicable to them as owners, producers and operators of oil and gas properties. For instance without Bond No. B000999 (an oil and gas lease bond issued for the benefit of the U.S. BLM), CDX Rio could lose its right to conduct drilling and other exploration operations in the state of New Mexico. Thus, the question of whether and how the Reorganized CDX Rio will meet its obligations to the Bond Beneficiaries bears directly on the feasibility and desirability of the proposed Restructuring and sale.

11. For these reasons, the Disclosure Statement should discuss at least briefly whether the Reorganized CDX Rio will reject or ignore the existing Bonds, whether it will obtain new bonds and how it will meet its bonding obligations after the Effective Date (including whether it will have adequate capitalization to do so). CDX Rio's creditors (including the Bonding Companies) need to know the answers to these questions in order to make an informed judgment on the CDX Rio Plan and the proposed Restructuring. *See, e.g., Texas Extrusion*, 844 F.2d at 1157.

**B.     The Disclosure Statement describes a plan of reorganization that is patently unconfirmable.**

12.     This Court should also deny approval of the Disclosure Statement because the CDX Rio Plan appears to contain at least one provision that renders it patently unconfirmable. A bankruptcy court may deny approval of a disclosure statement when it describes a plan of reorganization that is so fatally flawed that confirmation is impossible. *In re Miller*, Case No. 96-81663, 2008 WL 191256, at *3 (W.D. La. Jan. 22, 2008); *In re United States Brass Corp.*, 194 B.R. 420, 422 (Bankr. E.D. Tex. 1996) *In re 266 Washington Assocs.,* 141 B.R. 275, 288 (Bankr. E.D.N.Y. 1992), *aff'd In re Washington Assocs.*, 147 B.R. 827 (E.D.N.Y. 1992); *In re Copy Crafters Quickprint, Inc.*, 92 B.R. 973, 980 (Bankr. N.D.N.Y. 1988). As explained in *Copy Crafter*s and similar cases, the parties to a bankruptcy case should not have to shoulder the burden and expense of plan distribution and vote solicitation when the proposed plan could never be confirmed. *Copy Crafters*, 92 B.R. at 980; *see also In re Phoenix Petroleum Co.*, 278 B.R. 385, 394 (Bankr. E.D. Pa. 2001) ("Where the plan's inadequacies are patent, they may, and should be addressed at the disclosure statement stage."). Soliciting votes and seeking court approval on a "clearly fruitless venture" is a waste of time for both the bankruptcy court and the parties involved. *266 Washington Assocs.*, 141 B.R. at 288 (quoting *In re Valrico Square Ltd. P'ship*, 113 B.R. 794, 796 (Bankr. S.D. Fla. 1990)).

13.     In this case, the problematic plan provision appears at Section 6.06 of the CDX Rio Plan. This section provides as follows:

> **Section 6.06     Preexisting Obligations to the Debtor Under Executory Contracts and Unexpired Leases.**
>
> Rejection *or repudiation* of any executory contract or unexpired lease pursuant to the Plan or otherwise shall not constitute a termination of pre-existing obligations owed to the Debtor [CDX Rio] under such contracts or leases. In particular, *notwithstanding any nonbankruptcy law to the contrary*, the Reorganized Debtor expressly reserves and does not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations on goods previously purchased by the Debtor or Reorganized Debtor, as applicable, from counterparties to rejected *or repudiated* executory contracts or unexpired leases.

6

(CDX Rio Plan, § 6.06) (emphasis added). Although the Bonding Companies admit that they do not entirely understand this vaguely worded provision, the Bonding Companies must nevertheless point out that it seems on its face to contravene basic principles of the law governing executory contracts.

14. As a general rule, a debtor in possession or a trustee must assume all of an executory contract, including both its benefits and its burdens, or else reject the entire contract. *Century Indem. Co. v. National Gypsum Co. Settlement Trust (In re National Gypsum Co.),* 208 F.3d 498, 506 (5th Cir. 2000) (noting that an executory contract may not be assumed in part and rejected in part); *University Med. Ctr. v. Sullivan (In re University Med. Ctr.),* 973 F.2d 1065, 1075-76 (3d Cir. 1992) ("Assumption of the executory contract requires the debtor to accept its burdens as well as permitting the debtor to profit from its benefits."); *The Cajun Elec. Members Comm. v. Mabey (In re Cajun Elec. Power Coop., Inc.),* 230 B.R. 693, 710 (Bankr. M.D. La. 1999). A trustee or debtor in possession may not pick and choose which portion of the contract it wishes to assume and which it wishes to reject. *Cajun Elec. Power Coop.,* 230 B.R. at 710. Furthermore, when a debtor chooses to reject an executory contract, Bankruptcy Code § 365(g) provides that such rejection "constitutes a breach of such contract or lease". 11 U.S.C. § 365(g). This breach does not invalidate the contract or treat it as if it no longer exists. *O'Neill v. Continental Airlines, Inc. (In re Continental Airlines)*, 981 F.2d 1450, 1459-60 (5th Cir. 1993). The parties' respective rights and obligations under the rejected contract continue in existence following its rejection, and state law determines the consequences of the debtor's breach for those continuing rights and obligations. *Medical Malpractice Ins. Ass'n v. Hirsch (In re Lavigne),* 114 F.3d 379, 386-87 (2d Cir. 1997). In particular, state law will determine whether the non-debtor party to the contract is relieved of any further obligations or performance under the contract. *Tauton Mun. Lighting Plan v. Enron Corp. (In re Enron Corp.),* 354 B.R. 652, 659 (S.D.N.Y. 2006).

15. Section 6.06 appears to violate these basic principles by providing that rejection of any

7

executory contract pursuant to the Plan "shall not constitute a termination of pre-existing obligations" to CDX Rio "notwithstanding any nonbankruptcy law to the contrary." (CDX Rio Plan, § 6.06). It implies that a non-breaching counterparty must continue to perform even if, under state law, CDX Rio's breach would have excused that counterparty from all further performance under the agreement. (*See* CDX Rio Plan, § 6.06). Of course, by obligating CDX Rio's counterparties to perform their pre-existing obligations under rejected contracts no matter what state law would provide, Section 6.06 turns on its head the general rule that state law determines the legal consequences of rejection. In effect, this section permits CDX Rio to continue reaping the benefits of these rejected contracts despite having rejected them. *See National Gypsum Co.,* 208 F.3d at 506 (holding that a debtor must assume all of an executory contract or else reject the entire contract). This contravenes Bankruptcy Code § 365(g) and the applicable case law. This dilemma especially concerns the Bonding Companies. If the Debtors believe the Bonds constitute executory contracts, then the Bonding Companies do not wish to see Section 6.06 used to force them to continue as sureties under the Bonds while the Debtors escape any further obligations for, *inter alia*, premiums, costs and other fees that would ordinarily be due. Such an outcome would violate the Bonding Companies' rights as an executory contract counterparty under § 365(g) and applicable case law.

16.     By violating § 365(g) in this way, Section 6.06 of the CDX Rio Plan renders the plan patently unconfirmable. Bankruptcy Code § 1129(a)(1) requires that all plans comply with all applicable provisions of Title 11 to be confirmable. 11 U.S.C. § 1129(a)(1). Section 1123(b)(2) grants the authority for assuming, rejecting or assigning executory contracts under a Chapter 11 plan of reorganization. *Id*. § 1123(b)(2). However, § 1123(b)(2) expressly subjects the right of a Chapter 11 debtor to assume, assign or reject an executory contract to the provisions of Section 365. *Id.* ("[A] plan may… "*subject to section 365 of this title*, provide for the assumption, rejection, or assignment of any executory contract or unexpired lease of the debtor not previously rejected under such

8

section.") (emphasis added). Section 1123(b)(2) does not provide "blanket authority" to reject or assume executory contracts that exceeds the rights a Chapter 11 debtor would ordinarily have under § 365. 7 LAWRENCE P. KING ET. AL., COLLIER ON BANKRUPTCY ¶ 1123.02[2] (15th ed. 2009). CDX Rio's apparent attempt to acquire rights with respect to its executory contracts that exceed those allowed under § 365 violates § 1123. *See* 11 U.S.C. § 1123. Consequently, the CDX Rio Plan does not "comply with the applicable provisions" of the Bankruptcy Code as required by § 1129(a)(1) and is patently unconfirmable. *Id*. § 1129(a)(1). This Court should deny approval of the Disclosure Statement because of this facial defect in the CDX Rio Plan.

### III.   RESERVATION OF RIGHTS

17.    The Bonding Companies reserve the right to further amend, modify or supplement this Response at any time (including at the Disclosure Statement Hearing) and to request the adjournment of the Disclosure Statement Hearing. The Bonding Companies reserve all their rights in connection with the Disclosure Statement and/or as creditors in these Bankruptcy Cases.

WHEREFORE, PREMISES CONSIDERED, U.S. SPECIALTY INSURANCE COMPANY and INDEMCO, LP request that this Response be considered, that approval of the Disclosure Statement be denied, and that the Bonding Companies be granted all other proper relief under law or at equity.

<u>Dated</u>: May 22, 2009.

Respectfully Submitted,

LOCKE LORD BISSELL & LIDDELL LLP

*/s/ Philip G. Eisenberg*
Philip G. Eisenberg
Texas State Bar No. 24033923
W. Steven Bryant
Texas State Bar No. 24027413
3400 JPMorgan Chase Tower
600 Travis Street
Houston, Texas  77002
Tel. (713) 226-1200
Fax. (713) 223-3717

ATTORNEYS FOR U.S. SPECIALTY INSURANCE
COMPANY AND INDEMCO, LP

10

## CERTIFICATE OF SERVICE

I hereby certify that, on May 22, 2009 a true and correct copy of the foregoing Limited Response was duly served by ECF on all parties receiving electronic service in these cases and/or on the parties below by ECF or by regular United States mail, postage prepaid:

Vinson & Elkins L.L.P.,
Attn: Harry Perrin,
1001 Fannin Street, Suite 2500,
Houston, Texas 77002,
email: hperrin@velaw.com
**Counsel for CDX Rio LLC**

Office of the U.S. Trustee
Attn: Ellen Hickman
515 Rusk Avenue, Suite 3516
Houston, TX 77002
Ellen.Hickman@usdoj.gov
**Counsel for the U.S. Trustee**

Bracewell & Giuliani LLP
Attn: Trey Wood,
711 Louisiana Street, Suite 2300,
Houston, Texas 77002,
email: trey.wood@bgllp.com,
**Counsel for the EnerVest Purchasers**

Mayer Brown LLP
Attn: Charles Kelley
700 Louisiana Street, Suite 3400
Houston, Texas 77002
email: ckelley@mayerbrown.com
**Counsel for the First Lien Agent**

Akin Gump Strauss Hauer Feld LLP
Attn: Michael Stamer
One Bryant Park, New York, New York 10036
email: mstamer@akingump.com
**Counsel for the Second Lien Agent**

　　　　　　　　　　　　　　　　　　　　　　　/s/ *W. Steven Bryant*
　　　　　　　　　　　　　　　　　　　　　　　W. Steven Bryant

## CERTIFICATE OF CONFERENCE

I hereby certify that, on May 22, 2009, I spoke with Ginny Maslin, attorney for the Debtors, regarding the issues raised in this limited Response. We agreed that the Debtors and the Bonding Companies would work to resolve these concerns prior to the Disclosure Statement Hearing. The Bonding Companies are filing this limited Response solely to preserve their rights at the Disclosure Statement Hearing.

　　　　　　　　　　　　　　　　　　　　　　　/s/ *W. Steven Bryant*
　　　　　　　　　　　　　　　　　　　　　　　W. Steven Bryant

HOU 0024549.00002: 1398058v2