**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| IN RE: § | |
| § | |
| CDX GAS, LLC, et al. § | CASE NO. 08-37922 |
| § | |
| § | (Chapter 11) |
| § | (Jointly Administered) |

**LIMITED OBJECTION OF EL PASO E&P COMPANY, LTD. TO CONFIRMATION OF DEBTORS' SECOND AMENDED JOINT PLAN OF REORGANIZATION AND NOTICE OF RECOUPMENT**

TO THE HONORABLE LETITIA Z. PAUL, UNITED STATES BANKRUPTCY JUDGE:

NOW COMES EL PASO E&P COMPANY, LTD. ("El Paso"), by and through its undersigned counsel, and files this *Limited Objection of El Paso E&P Company, Ltd. to Confirmation of Debtors' Second Amended Joint Plan of Reorganization and Notice of Recoupment* ("Limited Objection") and would show the Court the following:

### I.   BACKGROUND FACTS

1. CDX Gas, LLC ("CDX") and certain of its affiliates and subsidiaries (collectively, the "Debtors") commenced the above-styled, jointly administered bankruptcy cases (the "Bankruptcy Cases") in this Court on December 12, 2008 (the "Petition Date") under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). The Debtors are primarily engaged in the exploration, development and production of onshore North American natural gas reservoirs located in coal, shale, and tight sandstone formations. The Debtors remain in possession of their property and continue to conduct their affairs as debtors and debtors-in-possession in these Bankruptcy Cases. No official committee of unsecured creditors has been appointed.

2. The Debtors filed the *Second Amended Joint Plan of Reorganization* [Bankr. D.I. 883] and its accompanying *Second Amended Disclosure Statement* [Bankr. D.I. 884] ("Disclosure

Statement") on August 5, 2009. The Court approved the Disclosure Statement on August 10, 2009. The Court has scheduled a hearing to consider confirmation of the Plan for September 22, 2009 at 10:30 a.m. The deadline for filing objections to the Plan is September 15, 2009.

3. On September 4, 2009, the Debtors filed the *Plan Supplement* [Bankr. D.I. 966] ("Plan Supplement") to accompany the Plan. The Plan Supplement, among other things, lists the various executory contracts and unexpired leases that the Debtors wish to reject or assume under the Plan. In particular, Schedule 6.01(b) of the Plan Supplement (which is incorporated as Schedule 6.01(b) of the Plan) identifies all the unexpired leases and executory contracts that the Debtors wish to assume under the Plan as well as the Debtors' proposed cure amounts.

4. El Paso is the operator on the White Oak Creek Prospect (the "Prospect") located in Tuscaloosa and Walker counties in the State of Alabama. Pursuant to that certain WHITE OAK CREEK PROSPECT OPERATING AGREEMENT, dated December 21, 1994 (the "Operating Agreement") and certain other related agreements (together, the "Agreements"), the Debtor CMV Joint Venture ("CMV") owns a non-operating working interest (Owner No. 19254402) (the "Working Interest") and an overriding royalty interest ("ORRI") in the Prospect. As the operator on the Prospect, El Paso filed a proof of claim in these Bankruptcy Cases on March 4, 2009 ("Original Proof of Claim") in the original principal amount of $877,846.15 for unpaid pre-petition joint interest billings owed by CMV as well as contractual default interest and attorneys' fees. El Paso's original claim was numbered Claim No. 405. The full amount of El Paso's claim, including the principal owed, default interest and attorneys' fees and costs, is secured by setoff and/or recoupment rights as well as by a lien and security interest on, *inter alia,* CMV's Working Interest and ORRI (as well as all proceeds and other interests associated with them). The scope of El Paso's lien and security interest is more fully set forth in Article XV of the Operating Agreement.

5. CMV subsequently paid certain additional amounts included in the Original Proof of Claim after the Debtors and El Paso determined that they were actually post-petition rather than pre-petition debts. El Paso then filed an amended Proof of Claim ("Amended Proof of Claim") against CMV in the principal amount of $600,314.52. The Amended Proof Claim was numbered Claim No. 1426. (El Paso also filed proofs of claim against CD Exploration, LLC ("CD Exploration") and CDX East, LLC ("CDX East"), in their capacities as the general partners of CMV.) At this time, the unpaid principal amount of joint-interest billings owed to El Paso remains $600,314.52. The Prospect continues to generate significant production and, as the operator, El Paso continues to pay the Debtors all amounts owed to them on account of their Working Interest and ORRI.

6. Schedule 6.01(b) of the Plan Supplement identifies the Operating Agreement and other Agreements as contracts to be assumed under the Plan. (Plan Supp. 6.01(b)). The Plan Supplement lists a proposed cure amount of $531,771.18 for all the Agreements. This cure amount does not comport with El Paso's calculation of the unpaid principal amount owed under the Agreements of $600,314.52 and also omits the unpaid pre-petition default interest and attorneys' fees.

7. Although El Paso does not object in principle to the Debtors' assumption of the Agreements (indeed, El Paso welcomes their assumption and looks forward to working with the Debtors for years to come), El Paso *does* object to the Debtors' assuming these agreements for a cure amount of $531,771.18 and without providing any assurance of future performance. Simply put, this proposed cure is too low. Further, because El Paso objects to the proposed cure amount, El Paso also informs the Debtors, as contemplated in Section 12.18 of the Plan, of its intent to recoup these amounts against any further production payable to the Debtors under the Agreements if the Debtors and El Paso cannot resolve their dispute over the cure amount.

3

## II.   OBJECTION TO CONFIRMATION OF PLAN

8. El Paso objects to confirmation of the Plan because the Plan fails to comply with § 1129(a)(1). Bankruptcy Code § 1129(a)(1) provides that a court may confirm a plan only if it "complies with the applicable provisions" of the Bankruptcy Code. 11 U.S.C. § 1129(a)(1). In practice, this means that a plan must satisfy the other provisions of the Bankruptcy Code, such as sections 1122 and 1123 governing the classification and contents of a chapter 11 plan, that are relevant to plan confirmation. *In re Cajun Elec. Power Coop., Inc.*, 150 F.3d 503, 513 n.3 (5th Cir. 1998) (recognizing that § 1129(a)(1) may be used to raise objections under § 1123), *cert. denied* 526 U.S. 1144 (1999); *In re Genesis Health Ventures, Inc.*, 266 B.R. 591, 600-09 Bankr. D. Del. 2001); *In re Greate Bay Hotel & Casino, Inc.*, 251 B.R. 213, 223-24 (Bankr. D. N.J. 2000) (examining plan's compliance with §§ 1122 and 1123 under authority of § 1129(a)(1)).

9. In this case, the Plan violates Bankruptcy Code § 365(b). Section 365 of the Bankruptcy Code provides that a trustee or a debtor in possession may, subject to the Court's approval, assume or reject any executory contract or unexpired lease. 11 U.S.C. § 365(a). To assume an executory contract under § 365, the trustee or debtor in possession must, at the time of assumption, 1) "cure[] or provide[] adequate assurance that the trustee will promptly cure" any default under the contract, 2) compensate the counterparty (or provide adequate assurance of prompt compensation) for any "actual pecuniary loss" resulting from the debtor's default, and 3) provide "adequate assurance of future performance" under the contract. 11 U.S.C. § 365(b)(1); *see also Century Indem. Co. v. National Gypsum Co. Settlement Trust (In re National Gypsum Co.)*, 208 F.3d 498, 506 (5th Cir. 2000); *In re Texas Health Enters., Inc.*, 246 B.R. 832, 835 (Bankr. E.D. Tex. 2000). In other words, a debtor must make the other party to the executory contract whole by curing any and all defaults in past performance and by providing assurance that it can continue to perform following assumption. *Lifemark Hosp., Inc. v. Liljeberg Enters., Inc. (In re*

4

*Liljeberg Enters., Inc.)*, 304 F.3d 410, 438-39 (5th Cir. 2002).

10. Here, the proposed cure amount of $531,771.18 set forth in Schedule 6.01(b) of the Plan Supplement is too low and therefore fails to adequately cure the Debtors' default under the Agreements. The actual principal amount owed to El Paso for the unpaid joint-interest billings is $600,314.52. Likewise, in addition to this principal amount, the Debtors also owe unpaid default interest and attorneys' fees. In order to cure and assume the Agreements, the Debtors must pay El Paso the entire amount (the $600,314.52 plus interest and fees) owed under the Agreements. *See Liljeberg Enters., Inc.*, 304 F.3d at 438-39. Otherwise, the Debtors cannot assume the Agreements.

11. Moreover, the Plan does not describe the nature of the adequate assurance of future performance that the Debtors intend to provide to El Paso in order to assume the Agreements. "Adequate assurance of future performance" is "extremely fact-specific". *Texas Health Enters. Inc. v. Lytle Nursing Home (In re Texas Health Enters. Inc.),* 72 Fed. Appx. 122, 126 (5th Cir. 2003). In general, assurance of future performance is adequate if "'performance is likely (i.e., more probable than not)'". *Texas Health Enters.*, 246 B.R. at 835 (*quoting In re PRK Enters., Inc.*, 235 B.R. 597, 603 (Bankr. S.D. Tex. 1999)). Under the Plan, the Debtors appear to provide no assurance at all. El Paso merely requests some assurance that the Debtors will continue to fulfill their obligations under the Agreements following the Effective Date of the Plan. Until the Debtors can provide such assurance, they cannot assume the Agreements under § 365(b)(1).

12. Lastly, because the Plan does not satisfy the requirements of § 365(b), it necessarily violates § 1129(a)(1) and is therefore unconfirmable. Consequently, until these executory contract issues are addressed, El Paso objects to the Plan as violative of § 1129(a)(1).

### III. NOTICE OF RECOUPMENT

13. In addition to its objection to the Plan, El Paso also further informs the Debtors of

its intent to recoup these amounts against any obligations payable to the Debtors on account of the Working Interest and ORRI, as contemplated in Section 12.18 of the Plan.

14. El Paso has an unmistakable right under Article VII.B of the Operating Agreement and other applicable law, to recoup the unpaid joint-interest billings owed by the Debtors from any payments due to the Debtors on account of the Working Interest and/or the ORRI. *See B & L Oil Co.*, 782 F.2d 155, 158 (10th Cir. 1986) (permitting recoupment of amounts arising out of same transaction); *In re Fiero Production, Inc.*, 102 B.R. 581, 585-86 (W.D. Tex. 1989) (permitting recoupment of amounts owed by mineral lease operator against payments owed to working interest holder). Amounts owed by working interest holders may ordinarily be recouped against any proceeds owed to them that arise from the sale of such holders' share of production from the well in question. *See Fiero Production*, 102 B.R. at 585-86. Article VII.B of the Operating Agreement confirms this common law rule and provides El Paso with a further contractual right to recoup amounts owed to it by the Debtors from any proceeds of production due to them (including, without limitation on account of the Working Interest and ORRI). (*See* Op. Agr. § VII.B).

15. In light of these clear recoupment rights, El Paso intends to recoup the amounts owed to it by the Debtors unless the Debtors and El Paso can reach an agreement regarding the assumption of the Agreements prior to confirmation of the Plan. As contemplated in Section 12.18 of the Plan, this Objection constitutes formal written notice of El Paso's intention to recoup these amounts prior to and/or after the Confirmation Date (as defined in the Plan) as against any payments owed to the Debtors on account of the Agreements.

### IV.   RESERVATION OF RIGHTS

16. El Paso reserves the right to further amend, modify or supplement this Objection at any time (including at any hearing on the Plan) and to request at any time the postponement

and/or adjournment of any hearing on the Plan for any length of time desired by El Paso. El Paso reserves all its rights in connection with this Objection, the Plan and/or as a creditor in these Bankruptcy Cases.

WHEREFORE, PREMISES CONSIDERED, EL PASO E&P COMPANY, LTD. requests the following: 1) that this Objection be considered, 2) that confirmation of the Plan be denied, and 3) that El Paso be granted all other proper relief to which it may be entitled under law or at equity.

<u>Dated</u>: September 15, 2009.

    Respectfully Submitted,

    LOCKE LORD BISSELL & LIDDELL LLP

    */s/ W. Steven Bryant*_____
    Philip G. Eisenberg
    Texas State Bar No. 24033923
    W. Steven Bryant
    Texas State Bar No. 24027413
    3400 JPMorgan Chase Tower
    600 Travis Street
    Houston, Texas 77002
    Tel. (713) 226-1200
    Fax. (713) 223-3717

    ATTORNEYS FOR EL PASO E&P COMPANY, LTD.

## CERTIFICATE OF SERVICE

I hereby certify that, on September 15, 2009 a true and correct copy of the foregoing Objection was duly served by ECF on all parties receiving electronic service in this case and on all the parties on the attached Service List by ECF, electronic facsimile or regular United States mail, postage prepaid.

                                                                                          _____/s/ W. Steven Bryant_____
                                                                                          W. Steven Bryant

## CERTIFICATE OF CONFERENCE

I hereby certify that on September 14, 2009, I spoke with Ginny Maslin, attorney for the Debtors in these Bankruptcy Cases, over the telephone and discussed this Objection and the Plan. Although we did not finally resolve all the issues raised by this Objection, the parties continue to work toward a reconciliation of their opposing cure amounts and other outstanding issues.

                                                                                         _____/s/ W. Steven Bryant _____
                                                                                        W. Steven Bryant

**SERVICE LIST**

| | |
|---|---|
| Harry Perrin<br>John west<br>Ginny Maslin<br>Vinson & Elkins LLP<br>Fax: (713) 758-2346<br>*Counsel to the Debtors* | Scott Alberino<br>Akin Gump Strauss Hauer Feld LLP<br>Fax: (202) 887-4288<br>*Counsel to the Second Lien Holders* |
| John Mitchell<br>Prentiss Cutshaw<br>Vinson & Elkins LLP<br>Fax: (214) 220-7716<br>*Counsel to the Debtors* | Judy Liu<br>Dewey and LeBoeuf<br>Fax: (212) 259-6333<br>*Counsel to the Subordinated Debt Agent* |
| Michael Stamer<br>Akin Gump Strauss Hauer Feld LLP<br>Fax: (212) 872 1002<br>*Counsel to the Second Lien Holders* | United States trustee Southern District of Texas<br>Attn: Ellen Hickman<br>Fax: (713) 718-4670<br>*The Office of the United States Trustee* |
| Charles S. Kelley<br>Mayer Brown LLP<br>Fax: (713) 238 4634<br>*Counsel to the first Lien Holders* | |

HOU:0000736/00823:1416425v1