IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

**ENTERED**
**12/02/2010**

|                    |     |                          |
| ------------------ | --- | ------------------------ |
|                    | )   |                          |
| IN RE              | )   |                          |
|                    | )   |                          |
| CDX GAS, LLC,      | )   | CASE NO. 08-37922-H3-11  |
|                    | )   |                          |
| Debtor,            | )   |                          |
|                    | )   |                          |

<u>MEMORANDUM OPINION</u>

The court has held a trial on the "Reorganized Debtors'
Objection to Claim No. 374 Filed by James Wright" (Docket No.
1695 filed by CD Exploration, LLC, CDX Acquisition Company, LLC,
and Vitruvian Exploration, LLC ("Objectors").  The following are
the Findings of Fact and Conclusions of Law of the court.  A
separate conforming Judgment will be entered.  To the extent any
of the Findings of Fact are considered Conclusions of Law, they
are adopted as such.  To the extent any of the Conclusions of Law
are considered Findings of Fact, they are adopted as such.

<u>Findings of Fact</u>

CDX Gas, LLC and seventeen of its affiliates filed
voluntary petitions under Chapter 11 of the Bankruptcy Code on
December 12, 2008.  The cases were jointly administered and
designated as a complex Chapter 11 case by orders entered
December 15, 2008.  Four additional affiliates filed voluntary
petitions under Chapter 11 of the Bankruptcy Code on April 1,
2009.  An order entered on April 8, 2009 jointly administered the

four cases filed April 1, 2009 with those filed on December 12, 2008.  Plans were confirmed as to CDX Rio, LLC on July 10, 2009 and as to the remaining Debtors on September 23, 2009.[1]

James Wright, who previously worked for CDX Gas, LLC ("CDX") as a supervisor in land administration at CDX's Dallas, Texas office, filed a proof of claim, in the amount of $17,850. Wright asserts that $10,950 of the claim is entitled to priority, pursuant to 11 U.S.C. § 507(a)(4).

In his proof of claim, Wright asserts that he is entitled to a twenty percent performance bonus for 2008.[2]  In the instant claim objection, Objectors assert that Wright was not entitled to the 2008 performance bonus, because he accepted a retention bonus instead.  Objectors also assert that, in the event Wright is entitled to a performance bonus, the bonus is not entitled to priority because he did not earn any portion of the bonus during the 180 days before the date of filing of the Chapter 11 petition.

Ed Donahue, who was chief financial officer of CDX from March, 2008 through the confirmation of CDX's plan, testified that CDX adopted two plans during 2008, in connection with the

---

[1]The plan as to the remaining debtors provided for dismissal as to several of the debtors and merger as to several of the other debtors.  The remaining entities are CD Exploration, LLC, CDX Acquisition Company, LLC, and Vitruvian Exploration, LLC.

[2]The $17,850 he seeks is twenty percent of $82,250, which he states in his proof of claim was his salary.

consolidation of its office in Dallas, Texas into its corporate headquarters in Houston, Texas.  Donahue testified that the first of these plans, the "2008 Bonus Plan," called for employees who relocated from Dallas to Houston and remained with CDX to receive a 20 percent bonus if CDX met certain operational targets.  He testified that the second plan, the "Retention Plan," was to retain employees who chose to stay in Dallas through the transition period.  He testified that the 2008 Bonus Plan was made effective on July 1, 2008.

Donahue testified that the two plans were communicated to employees through a series of conference calls.  He testified that independent contractors were invited as a courtesy, so that they would know what was occurring.

Wright testified that he attended one of the conference calls.  He testified the participants on the conference call were told they would receive a 20 percent bonus if they remained with CDX through 2008.  He testified that he did not believe himself to be eligible for the 2008 Bonus Plan at that time, because his employment contract was set to expire in September, 2008.

Wright received a written offer under the Retention Plan.  The offer, dated September 23, 2008, incorporates by reference an attached letter, dated June 16, 2008, describing the Retention Plan.  The September 23, 2008 letter provided that it extended Wright's retention period to March, 31, 2009.  Both the

September 23, 2008 letter and the June 16, 2008 letter were signed on CDX's behalf by "Glenda Wood, for Roger Rice, Senior Vice President and Chief Administrative Officer." (Objectors' Exhibit 1).[3]

Wright testified that during September, 2008, he met with Glenda Wood, the director of human resources for CDX.  He testified that Wood requested that he stay on through December, 2008.  He testified that Wood stated that staying on would make him eligible for the 2008 Bonus Plan.  He testified that, after Wood so stated, he signed the bottom of the September 23, 2008 letter.

Donahue testified that Wright has been paid everything he is due under the Retention Plan.  He testified that no one who did not relocate was entitled to payment under the 2008 Bonus Plan.  He testified that Wood was not authorized to offer the 2008 Bonus Plan to Wright.

Donahue testified that Wright worked for CDX as a contract employee through the end of March, 2009.

<u>Conclusions of Law</u>

Section 502(b)(1) of the Bankruptcy Code provides that the court shall allow a claim, except to the extent that such claim is unenforceable against the debtor and property of the

---

[3]The court notes that neither of the letters contains a "merger clause," providing that it is the sole expression of the agreement between the parties.

4

debtor.   11 U.S.C. § 502(b)(1).

When a proof of claim in bankruptcy is filed, the party filing the claim is presumed to have made a prima facie case against the debtor's assets.   The objecting party must produce evidence rebutting the presumption raised by the proof of claim. If such evidence is produced, the party filing the claim must then prove by a preponderance of the evidence the validity of the claim.   The claiming party, through this process, bears the ultimate burden of proof.   In re Fidelity Holding Company, Ltd., 837 F.2d 696, 698 (5th Cir. 1988); In re Missionary Baptist Foundation of America, 818 F.2d 1135, 1143-1144 (5th Cir. 1987).

A written contract that is not required by law to be in writing may be modified by a subsequent oral agreement.   Am. Garment Props., Inc. v. CB Richard Ellis-El Paso, L.L.C., 155 S.W.3d 431 (Tex.App.-El Paso 2004, no pet.).

The statute of frauds applies only to those employment contracts that must last longer than one year.   Morgan v. Jack Brown Cleaners, Inc., 764 S.W.2d 825 (Tex.App.-Austin 1989, writ den.); Tex. Bus. & Com. Code § 26.01(b)(6).

In the instant case, the employment contract did not last longer than one year.   Thus, the statute of frauds does not apply.

To establish an implied agency or apparent authority to act as an agent, one must show that the principal either

knowingly permitted its agent to hold himself out as having authority or showed such lack of ordinary care as to clothe the agent with indicia of authority.  <u>Nationsbank, N.A. v. Dilling</u>, 922 S.W.2d 950 (Tex. 1996).

In the instant case, CDX held out Wood as having authority to act on its behalf.  Wood was permitted to sign the written contracts on behalf of CDX's vice president.  The uncontroverted testimony of Wright is that it was Wood who summoned him to her office in order to negotiate the terms of his continued retention after September, 2008.  The court concludes that Wood had apparent authority to act on behalf of CDX.  Thus, Wood's oral offer to Wright of a contract modification, accepted by Wright, binds CDX.  In the absence of a merger clause, the subsequent written agreement does not render Wood's oral promise unenforceable.  The court concludes that Wright's claim should be allowed.

As to the question of whether Wright's claim is entitled to priority, Section 507(a)(4)(A) of the Bankruptcy Code provides priority:

(4) Fourth, allowed unsecured claims, but only to the extent of $10,950[4] for each individual or corporation, as the case may be, earned within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first, for–

---

[4]The amount stated is as it was in effect on the petition date.

6

(A) wages, salaries, or commissions, including
vacation, severance, and sick leave pay earned by
an individual.

11 U.S.C. § 507(a)(4)(A).

Objectors' contention that Debtor did not earn any
portion of his bonus due under the 2008 Bonus Plan during the 180
days before the date of the filing of the petition in the CDX
case lacks merit.  Donahue testified that CDX adopted the 2008
Bonus Plan effective on July 1, 2008.  CDX filed its petition on
December 12, 2008.  The court concludes that all amounts due
under the 2008 Bonus Plan were earned during the 180 days before
the date of the filing of the petition.[5]

Based on the foregoing, a separate Judgment will be
entered allowing the claim filed by James Wright, in the amount
of $17,850, of which $10,950 is entitled to priority pursuant to
11 U.S.C. § 507(a)(4)(A).

Signed at Houston, Texas on December 2, 2010.

LETITIA Z. PAUL
UNITED STATES BANKRUPTCY JUDGE

---

[5]The court notes Donahue's testimony that none of the
employees who moved to Houston actually got their benefits under
the 2008 Bonus Plan, but rather that they were compensated
pursuant to a separate "Non-Insider Employee Retention Plan"
adopted by CDX in anticipation of its Chapter 11 case.  He
testified that approximately 100 employees shared in
approximately $1.5 million in bonuses under the "Non-Insider
Employee Retention Plan."

7